ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA  2009 FEB 19 PM 3: 48

DUBLIN DIVISION

| | |
|---|---|
| JUAN MANUEL ORTIZ-ALVEAR, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 308-055 |
| ) | |
| WALT WELLS, Warden, et al.,[1] ) | |
| ) | |
| Respondents. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate currently incarcerated at McRae Correctional Facility ("McRae") in McRae, Georgia, has commenced the above-captioned case pursuant to 28 U.S.C. § 2241 contesting the execution of his sentence of confinement. Respondents have filed their response to the petition, to which Petitioner has filed a reply. (Doc. no. 32, 33).[2]

---

[1] Although Petitioner named multiple Respondents in his original and amended petitions, as discussed in Part II.A below, only Walt Wells, Warden of McRae Correctional Facility, is the proper Respondent in this action. All others, including the United States Attorney's Office of the Eastern District of New York and Stacey N. Stone, Acting Warden of McRae Correctional Facility, who were named in the original but not the amended petition, are not proper Respondents.

[2] As alluded to in note 1 above, Petitioner originally filed his § 2241 petition in the Eastern District of New York, (doc. no. 1), and the case was transferred this District by Order of the Honorable John Gleeson, United States District Judge. (Doc. no. 21). Petitioner then requested permission to file an amended petition and requested that the amended petition be accepted "in lieu of the other." (Doc. no. 27, p. 9). This Court granted Petitioner's request. (Doc. no. 30). Respondents then filed their response to the amended petition. (Doc. no. 32). For ease of reference, the amended petition and the response to the amended petition are referred to herein as simply the "petition" and the "response."

For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that the United States Attorney's Office, Stacey N. Stone, and Harley G. Lappin be **DISMISSED** as improper party Respondents, that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

## I. BACKGROUND

On June 13, 1995, following a jury trial in the Queens County Supreme Court of New York, Petitioner was found guilty of attempted murder and two counts of assault in the first degree. (Doc. no. 31, pp. 3-4). Before Petitioner was sentenced on his state conviction, he was transferred to federal custody for trial on 18 counts of drug distribution, money laundering, and structuring currency transactions. (Doc. no. 32, p. 4). Petitioner was found guilty on all charges and was sentenced to 210 months of imprisonment on November 7, 1995 by the Honorable David G. Trager, United States District Judge for the Eastern District of New York. (Id., Ex. 2). Judge Trager was aware of the forthcoming state sentence at the time he sentenced Petitioner, but he did not state whether the federal sentence imposed was to be served consecutive or concurrent to any state sentence Petitioner may receive. (Doc. no. 31, Ex. 4; doc. no. 32, Ex. 2). Following the federal sentencing, Petitioner was transferred back into the custody of the State of New York, where the state court sentenced Petitioner to 8 to 24 years on the attempted murder charge, and 4 ½ to 13 ½ years each on both of the assault charges. (Id., Ex. 2-A). The state court specified that the state sentences were to run concurrent with each other and consecutive to Petitioner's federal sentence. (Id.).

As the State of New York arrested Petitioner first and therefore had primary jurisdiction, Petitioner served his state sentence first. On August 27, 2001, the New York

State Parole Board denied Petitioner parole, based in part on his federal conviction. (Doc. no. 32, p. 6). Petitioner was again denied parole on August 20, 2003, based generally on his prior criminal record. (Doc. no. 31, Ex. 1, p. 3). On October 27, 2005, Petitioner was paroled to federal authorities to serve his federal sentence. (Doc. no. 32, Ex. 2-B). He began serving his federal sentence the same day, and his projected release date is January 22, 2021. (Id., Ex. 1). After coming into federal custody, Petitioner sought to have the Bureau of Prisons designate a state facility as the facility where he would serve his federal sentence *nunc pro tunc*. The Bureau of Prisons ("BOP") denied this request on September 13, 2007. (Doc. no. 31, Ex. 2).

Petitioner has now filed the instant § 2241 petition arguing (1) his state and federal sentences should run concurrently; (2) he is entitled to a *nunc pro tunc* designation that would permit his federal sentence to begin when it was imposed on November 7, 1995; and (3) his rights under the Double Jeopardy Clause were violated when the state parole board denied him parole on two separate occasions based on the same federal conviction. Respondent argues that (1) the BOP properly computed Petitioner's federal sentence to run consecutive to his state sentence; (2) the BOP properly reviewed Petitioner's request for a *nunc pro tunc* designation; and (3) Petitioner's § 2241 petition is not the proper forum for challenging the state parole board's decision.

## II. DISCUSSION

### A. Improper Respondents

Before turning to the merits of the § 2241 petition, the Court first addresses the proper parties to this action. Petitioner has named the United States Attorney's Office for

the Eastern District of New York; Stacey N. Stone, Acting Warden of McRae; Harley G. Lappin, Director of the BOP; and Walt Wells, Warden of McRae, as Respondents in this action. However, the United States Attorney's Office, Acting Warden Stone, and Director Lappin are not proper Respondents because, in a habeas proceeding, the case or controversy is between the person in custody and his custodian. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) ("[L]ongstanding practice confirms that in habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ."); Wacker v. Bisson, 348 F.2d 602, 605 (5th Cir. 1965).[3] Thus, Walt Wells, Petitioner's custodian by virtue of his position as Warden at McRae, is the proper Respondent. Therefore, the Court **REPORTS** and **RECOMMENDS** that the United States Attorney's Office, Acting Warden Stone, and Director Lappin be **DISMISSED** from this case.

B.  **Concurrent or Consecutive Sentence?**

Petitioner's first argument is that his federal and state sentences should have been imposed to be served concurrently, rather than consecutively. He claims that if he is allowed to serve his sentences concurrently, his maximum period of incarceration would be significantly reduced . (See doc. no. 31, p. 13). Petitioner does not cite any case law in support of his claim that his sentences should run concurrently, but simply argues that the state sentencing judge, not the BOP, should have decided whether the sentences were to be

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

4

imposed concurrently or consecutively because the state court was the second court to sentence him.[4] (Id. at 16).

Petitioner's argument is misguided. The rule applicable to the situation presented is set forth at 28 U.S.C. § 3584, which states in pertinent part as follows:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively.... Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. *Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.*

28 U.S.C. § 3584(a) (emphasis added). Thus, where sentences are imposed at different times and the sentencing judge does not specify whether the sentences are to be served concurrently or consecutively, the statutory presumption provides that the sentences are to be served consecutively. Id.; see also United States v. Ballard, 6 F.3d 1502, 1505 (11th Cir. 1993). Moreover, the Eleventh Circuit has held that a district court has the authority to impose a sentence to run consecutive to an "unimposed, future sentence." United States v. Andrews, 330 F.3d 1305, 1306-07 (11th Cir. 2003).

Here, Petitioner's state and federal sentences were clearly imposed at different times, as the federal sentence was imposed in November 1995 and the state sentence in February 1996. In addition, Judge Trager did not indicate whether the federal sentence should be served concurrently or consecutively with the yet-to-be-imposed state sentence. Accordingly, the statutory presumption of consecutive sentences applies, and Petitioner has presented no

---

[4]This argument is somewhat perplexing because, as noted above, the state court in fact decided that Petitioner's state and federal sentences were to be served consecutively.

5

reason that would compel a contrary conclusion. Moreover, even if Judge Trager had specified that the sentence was to be served consecutively, he would have been well within his discretion to do so. See Andrews, 330 F.3d at 1306-07. In sum, Petitioner's argument that he should be allowed to serve his state and federal sentences concurrently fails, and he is not entitled to relief on this claim.

C.     *Nunc Pro Tunc* **Designation to State Custody**

The Court turns next to Petitioner's request for a *nunc pro tunc* designation to state custody. The Regional Inmate Systems Administrator ("RISA") has the authority to designate a non-federal facility for concurrent service of a federal sentence and may make such a designation "when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system." (Doc. no. 32, Ex. 6, PS 5160.05(7), (8)).[5] When the federal judgment provides no indication of the sentencing court's intent on this issue, the

---

[5]The BOP asserts this authority based upon 18 U.S.C. § 3621(b), which states:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering - -
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence - -
        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
        (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

RISA has an obligation to look at the case and exercise discretion when deciding whether the state prison should be designated as a place of federal confinement *nunc pro tunc*. McCarthy v. Doe, 146 F.3d 118, 123 (2d Cir. 1998); United States v. Evans, 159 F.3d 908, 911-12 (4th Cir. 1998); Barden v. Keohane, 921 F.2d 476, 482 (3rd Cir. 1990); Rodriguez v. Pitzer, 76 Fed. App'x 519, 520 (5th Cir. Aug. 7, 2003); Jones v. Winn, 13 Fed. App'x 419, 421 (7th Cir. June 29, 2001).[6] The RISA must exercise his own independent judgment, considering the factors set forth at 18 U.S.C. § 3621(b) and the BOP's interpretation of this statute set forth in PS 5160.05.[7] Trowell v. Beeler, 135 Fed. App'x 590, 596 (4th Cir. May 19, 2005).

Here, the RISA complied with his duty to determine whether Petitioner was entitled to a *nunc pro tunc* order and determined that such an order was not appropriate for Petitioner. (Doc. no. 31, Ex. 2). In response to Petitioner's request, it was specifically noted that at the time Petitioner's federal sentence was imposed, Judge Trager was aware of Petitioner's forthcoming state sentence and did not direct that any sentence imposed be served concurrently. (Id.). The RISA also commented that Judge Trager had been consulted with respect to Petitioner's request and had not responded. (Id.). Consistent with the statutory

---

[6] The Eleventh Circuit has not addressed the issue. But see Richardson v. United States, No. 4:02CV298, 2005 WL 2406039, *3 (N.D. Fla. Sept. 29, 2005) (holding that the BOP has the authority exercise its discretion and designate a state facility as the place of service for an inmate's federal sentence).

[7] The factors to be considered under PS 5160.05(8)(a) include: "inmate discipline history, institutional adjustment, recommendations of the Wardens at the state and federal institutions, the recommendation of the prosecuting Assistant U.S. Attorney, intent of the federal sentencing court, if available, and any other pertinent information regarding the inmate."

7

presumption regarding consecutive sentences described above, the RISA inferred from this silence that the district court opposed Petitioner's request for a *nunc pro tunc* order. (Id.).

In addition, as noted by Respondents, the nature of the state and federal crimes were quite different. The state charges were crimes of violence - attempted murder and assault - while the federal charges were drug related - namely, distribution, money laundering, and structuring currency transactions. Given the difference in the nature of the offenses, it is not surprising that the RISA determined that a *nunc pro tunc* designation would be inconsistent with the goals of the criminal justice system and denied Petitioner's request. See 18 U.S.C. § 3621(b)(2) ("The Bureau may designate any available penal or correctional facility... that the Bureau determines to be appropriate and suitable, considering . . . *the nature and circumstances of the offense* . . . .") (emphasis added). The decision regarding a request for a *nunc pro tunc* order is reviewed for abuse of discretion, and the reviewing court may only consider whether an applicant's request was properly considered by the BOP. See Barden, 921 F.2d at 478. As the Court determines that the Petitioner's request for a *nunc pro tunc* order was properly considered, his request for habeas relief on this ground also fails.

### D. Challenge to the State Parole Board's Decisions

Petitioner's final argument is that the decisions of the state parole board to twice deny him parole violate the Double Jeopardy Clause because the decisions were based, in part, on Petitioner's federal conviction on both occasions. Petitioner is essentially challenging his period of confinement in state custody, a claim that should have been brought in a habeas petition while he was in the custody of the State of New York. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ( "[W]hen a state prisoner is challenging the very fact or duration of

8

his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release . . . , his sole federal remedy is a writ of habeas corpus."). As a general rule, all federal habeas petitioners, regardless of the nature of the claim and whether they are proceeding under 28 U.S.C. § 2254 or 28 U.S.C. § 2241, are required to exhaust state court remedies before seeking relief in federal court. See Hughes v. Attorney Gen. of Fla., 377 F.3d 1258, 1262 n.2 (11th Cir. 2004); Medberry v. Crosby, 351 F.3d 1049, 1060 (11th Cir. 2003). As Petitioner has not alleged that he exhausted his state court remedies before presenting this claim in federal court, this claim is subject to dismissal. See 28 U.S.C. § 2254(b) & (c). This Court will not allow Petitioner to circumvent the exhaustion requirements by waiting until he is in federal custody to bring this claim in the current petition. As one court has aptly stated, there is "no reason why a prisoner sentenced to serve consecutive state and federal sentences should be allowed to escape the . . . exhaustion requirement by waiting until he is in federal custody to challenge the constitutionality of his state confinement." United States v. Winter, 730 F.2d 825, 827 (1st Cir. 1984).

Even assuming *arguendo* that Petitioner had exhausted his state court remedies, his argument lacks merit. The Double Jeopardy Clause prohibits the government from prosecuting an individual twice for the same offense. While the charged "offenses need not be identical to constitute the same offense for double jeopardy purposes," United States v. Moore, 43 F.3d 568, 571 (11th Cir. 1994) (citing Brown v. Ohio, 432 U.S. 161, 164 (1977)), there is no violation of the Double Jeopardy clause if each of the charged offenses "requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932).

9

Here, Petitioner does not seek habeas relief on the ground that he was prosecuted twice on the same charge; rather, he challenges the state parole board's use of his federal conviction to deny him parole on two separate occasions. This is not the type of situation to which the Double Jeopardy clause applies. Indeed, the Supreme Court has noted that "the risk to which the [Double Jeopardy] Clause refers is not present in proceedings that are not 'essentially criminal'" in nature. Breed v. Jones, 421 U.S. 519, 521 (1975) (citations omitted). Consistent with this statement, the precedent in this circuit holds that the Double Jeopardy Clause does not apply to parole proceedings. See Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir. 1986) ("The [D]ouble [J]eopardy [C]lause does not apply to parole revocation proceedings."); United States v. Whitney, 649 F.2d 296, 297 (5th Cir. 1981) (finding that the Double Jeopardy Clause was not violated where the state parole board considered certain evidence in a second probation revocation proceeding that had formed the basis for a prior probation revocation proceeding).[8]

Not withstanding Petitioner's failure to exhaust, the Court is not persuaded that any difference between parole revocation proceedings and a state parole board decisions to deny an inmate parole warrants a different conclusion regarding the inapplicability of the Double Jeopardy Clause. Indeed, it is difficult to see how a decision to deny parole to an inmate is an "essentially criminal" one that would implicate the Double Jeopardy Clause. An inmate seeking parole has already been sentenced for his criminal conduct and does not face any

---

[8]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

10

additional punishment (other than that already imposed by the sentencing court) simply because a parole board decides not to grant him parole.

In sum, Petitioner's claim that his rights were violated when the state parole board considered the same federal conviction in both of its decisions to deny him parole fails because (1) Petitioner failed to exhaust this claim in state court, and (2) the Double Jeopardy Clause does not apply to parole proceedings. Accordingly, this claim also fails to provide a basis for federal habeas relief.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the United States Attorney's Office, Stacey N. Stone, and Harley G. Lappin be **DISMISSED** as improper party Respondents, that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

SO REPORTED and RECOMMENDED this 19th day of February, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE